IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph A. Prim, Esq.,                          :
                              Petitioner       :
                                               :
            v.                                 :
                                               :
Har Jehuda Cemetery and                        :
Michael Shields (Workers'                      :
Compensation Appeal Board),                    :   No. 1443 C.D. 2023
                              Respondents       :   Submitted: July 7, 2025

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                         FILED: September 4, 2025

            Joseph A. Prim, Esquire (Prim) petitions for review from the November
9, 2023 order of the Workers' Compensation Appeal Board (Board) that affirmed
the decision of a Workers' Compensation Judge (WCJ) which denied Prim's request
for a *quantum meruit* award of attorney's fees pursuant to Section 440(a) of the
Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77
P.S. § 996(a).[1]  Upon review, we affirm the Board's order denying Prim's request
for attorney's fees under Section 440(a) of the Act.

## I.  Background and Procedural Posture

            Michael Shields (Claimant) began employment as a landscaper for Har
Jehuda Cemetery (Employer) in July 2020.  *See* WCJ Decision circulated December
13, 2021 (First WCJ Decision) at 3; *see also* Board Opinion mailed November 9,

---

[1] Added by Section 3 of the Act of February 8, 1972, P.L. 25.

2023 (Board Remand Opinion) at 1. A week later, on July 27, 2020, Claimant was injured at work in an incident wherein a lawn mower ran over Claimant's foot, causing lacerations to the foot, amputations of toes, and anxiety and post-traumatic stress disorder in Claimant. *See* First WCJ Decision at 3; *see also* Board Remand Opinion at 1. As a result, Claimant filed a claim petition (Claim Petition) seeking ongoing total disability benefits as of July 27, 2020. *See* First WCJ Decision at 3; *see also* Board Remand Opinion at 1. Employer issued a Notice of Workers' Compensation Denial based on code 4A, which is "substance use/abuse: Injury Primarily Occasioned by Intoxication or Use of Any Drug." *See* First WCJ Decision at 3; *see also* Board Remand Opinion at 1.

Claimant challenged Employer's denial before a WCJ. Regarding representation, Prim represented Claimant through March 22, 2021, and Willliam E. Malone, Esquire, represented Claimant from March 23, 2021, onward. *See* Board Remand Opinion at 1. Claimant executed a 20 percent contingent fee agreement with each attorney. *See* Board Remand Opinion at 1. Prim also submitted a *quantum meruit* fee statement for $16,747.50. *See* Board Remand Opinion at 1.

Before the WCJ, Claimant testified[2] regarding his hiring by and job responsibilities with Employer. *See* First WCJ Decision at 3. Claimant further testified as to the mechanism of his work injury, his treatment therefor, and the extent of his injuries and continuing disability. *See id.* at 3-5. Regarding medications, Claimant testified to the following:

> Within 24 hours before the incident, Claimant took only his prescribed medication of Xanax. He did not take any illegal drugs. Within 24 hours before the incident,

---

[2] The WCJ received Claimant's testimony by way of a September 17, 2020 deposition, and live testimony on April 14, 2021. *See* First WCJ Decision at 3-5.

Claimant had taken an over-the-counter herbal product Kratom. Claimant indicated that he took Kratom either the night before or the morning of the incident. Claimant indicated that Kratom is a powder that he puts in his tea for anxiety. He uses about a tablespoon of powder. Claimant is prescribed Xanax by Dr. Wrenn[;] he typically takes 2mg a day. Claimant has been prescribed Xanax for his anxiety for about three years. Claimant testified that neither the medication nor the herbal supplement affected Claimant's ability to perform his job that day and did not cause him to trip or fall.

First WCJ Decision at 4; *see also* First WCJ Decision at 5. Claimant further testified that he did not smoke marijuana within 24 hours of the incident and he has never taken crystal methamphetamine. *See id.* On cross-examination, Claimant explained that he had not used heroin for more than a year prior to his work injury, and that he had not used marijuana, which he smokes mainly as a sleep aid, for three days prior to the incident. *See id.* Claimant further explained that he does not drink alcohol, with the possible exception of the Christmas or New Year holiday. *See id.* Claimant further testified that he treated for opioid use at an in-patient rehabilitation center in Florida for four and one-half to five months in 2019, and again at another rehabilitation center for one month from February 25, 2021, through March 23, 2021. *See id.* at 4 & 5. Claimant testified that he was clean and sober as of April of 2021. *See id.* at 5. The WCJ found Claimant's testimony to be both credible and persuasive. *See id.* at 11. Specifically, the WCJ found that Claimant "provided consistent and transparent testimony with regards to his history of drug use, and specifically, the use of any medications and supplements during the timeframe surrounding the incident." *Id.*

In addition to Claimant's presentation of his own testimony and evidence from medical providers regarding his injuries, both sides presented

3

toxicological evidence in reference to Employer's defense asserting Claimant's intoxication. *See* First WCJ Decision at 3-9; *see also* Board Remand Opinion at 1. Regarding Employer's defense of Claimant's purported intoxication, the WCJ received the deposition testimony of Dr. Lawrence J. Guzzardi, for Claimant, and the deposition testimony of Dr. John Kashani, for Employer. *See* First WCJ Decision at 9-11.

In brief, Dr. Guzzardi, who is board certified in medical toxicology, emergency medicine, and family medicine, testified that he reviewed the record (including pertinent medical records, testimony and reports of multiple physicians, and the testimony of Claimant) and was unable to find any evidence of toxicological impairment of Claimant at the time of Claimant's injury on July 27, 2020. *See* First WCJ Decision at 7. Dr. Guzzardi further discussed the various substances Claimant had taken in the past (including Xanax, Kratom, and marijuana) and explained that, based on the half-lives of and tolerances to the various products, none would have had more than a minimal effect, if any, on Claimant on the afternoon of the lawn mower incident. *See id.* at 7-8. Dr. Guzzardi disagreed with Dr. Kashani's opinion that combined effects of the substances Claimant had taken would have caused inebriation and/or intoxication to the extent that Claimant would have been at high risk for bodily injury while operating a lawnmower. *See id.* at 8-9. The WCJ found Dr. Guzzardi's testimony to be both credible and persuasive. *See id.* at 11-12.

Dr. Kashani, who is board certified in addiction medicine, antiaging and regenerative medicine, and emergency medicine, testified that he reviewed various medical records and Claimant's testimony. *See* First WCJ Decision at 10. Dr. Kashani discussed that Claimant's urine screen was positive for amphetamines, marijuana, and benzodiazepines. *See id.* Ultimately, Dr. Kashani testified within a

4

reasonable medical and toxicological certainty that the combined effects of Xanax and Kratom caused inebriation to the extent that Claimant was at high risk for bodily injury while operating a lawnmower. *See id.* at 10. The WCJ found Dr. Kashani's testimony to be neither credible nor persuasive. *See id.* at 12.

On December 13, 2021, the WCJ entered the First WCJ Decision, which found that Claimant met his burden of proof on his Claim Petition and accordingly awarded Claimant total disability benefits and medical benefits. *See* First WCJ Decision; Board Remand Opinion at 2. The WCJ further determined that Employer failed to sustain its burden to prove Claimant's intoxication, but that Employer's contest was reasonable. *See* First WCJ Decision at 13; Board Remand Opinion at 2. The WCJ approved Claimant's contingent fee agreements and awarded Prim 20 percent of Claimant's indemnity benefits.[3] *See* First WCJ Decision at 13; Board Remand Opinion at 2.

Prim appealed the First WCJ Decision to the Board, alleging that the WCJ erred by concluding that Employer's intoxication contest was reasonable and by failing to award the requested *quantum meruit* attorney's fees. *See* Board Remand Decision at 2; *see also* Board Opinion mailed July 27, 2022 (First Board Opinion). The Board reviewed the record, the testimony of the parties' toxicology witnesses, and the WCJ's credibility determinations regarding the toxicology witnesses, and ultimately disagreed with Prim's claim that the WCJ erred by determining that Employer had reasonably contested the Claim Petition. *See* Board

---

[3] The WCJ awarded Prim attorney's fees from the date of injury through June 3, 2020, and Attorney Malone attorney's fees from June 3, 2020, onward, with 10 percent per annum interest on any past due fees. *See* First WCJ Decision at 13. The parties later stipulated to an amendment of the First WCJ Decision whereby Prim received attorney's fees from the date of injury through March 21, 2021, and Attorney Malone received fees from March 23, 2021, ongoing, again with 10 percent per annum interest on past due fees. *See* Board Remand Opinion at 2; *see also* Board Opinion mailed July 27, 2022 (First Board Opinion) at 2.

Remand Opinion at 2; *see also* First Board Opinion at 3-8. However, the Board remanded the matter to the WCJ for consideration of the *quantum meruit* attorney's fees under Section 440 of the Act, 77 P.S. § 996, in light of the then-recently decided Pennsylvania Supreme Court case of *Lorino v. Workers' Compensation Appeal Board (Commonwealth of Pennsylvania)*, 266 A.3d 487 (Pa. 2021), which noted that the Act provides WCJs with discretion to award or exclude attorney's fees payable under Section 440(a) where an employer proves the reasonableness of its contest of a claim petition. *See* Board Remand Opinion at 2; *see also* First Board Opinion at 10-11.

Thereafter, by decision circulated April 4, 2023 (WCJ Remand Opinion), the WCJ denied Prim's *quantum meruit* fees requested under *Lorino*. *See* WCJ Remand Opinion at 3-5; Board Remand Opinion at 2. Prim appealed, and the Board affirmed. *See* Board Remand Opinion at 5-6, Order. Prim thereafter timely appealed to this Court.

## II. Issues

On appeal,[4] Prim claims the Board erred by affirming the WCJ Remand Opinion that denied his request for *quantum meruit* attorney's fees. *See* Prim's Br. at 4, 12-19. Specifically, Prim alleges the Board erred by affirming the WCJ's determination that Employer's contest of the Claim Petition was reasonable based on the testimony of Employer's expert. *See id.* at 12-19. Prim further claims that, even if Employer's contest was reasonable, Employer should still have been directed to pay the claimed *quantum meruit* attorney's fees because the contest was only

---

[4] This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Thompson v. Workers' Comp. Appeal Bd. (Cinema Ctr.)*, 981 A.2d 968, 972 n..4 (Pa. Cmwlth. 2009).

6

marginally reasonable and the compensation awarded was inadequate. *See id.* at 20-23.

### III. Discussion

**A. *Attorney's Fees and Reasonable Contest by Employer***

Section 440(a) of the Act provides that

> [i]n any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: **[p]rovided, [t]hat cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer**.

77 P.S. § 996(a) (emphasis provided).

Whether an employer's contest was reasonable is a question of law, freely reviewable by this Court. *Essroc Materials v. Workers' Comp. Appeal Bd. (Braho)*, 741 A.2d 820, 826 (Pa. Cmwlth. 1999). The reviewing court must examine the totality of the circumstances surrounding the contest. *Eidell v. Workmen's Comp. Appeal Bd. (Dana Corp.)*, 624 A.2d 824 (Pa. Cmwlth. 1993). The reasonableness of an employer's contest depends on whether the contest was prompted to resolve a genuinely disputed issue, which can be a legal or factual issue or both. *Thompson v. Workers' Comp. Appeal Bd. (Cinema Ctr.)*, 981 A.2d 968,

973 (Pa. Cmwlth. 2009). A contest is reasonable if the employer, at the time it files its petition, has evidence that would support its petition and it is obvious that the contest is not frivolous or commenced to harass the claimant. *Id.* The purpose of Section 440(a) of the Act is "to deter unreasonable contests of workers' claims and to ensure that successful claimants receive compensation undiminished by the costs of litigation." *Eidell*, 624 A.2d at 826.

Regarding a WCJ's discretion in awarding Section 440 attorney's fees, our Supreme Court noted in *Lorino* that

> [b]ased on the established meaning of the terms "shall" and "may," under Section 440, when a contested case is resolved in favor of an employee, a reasonable sum for attorney's fees *shall* be awarded to the claimant. Such an award is *mandatory*. Where, however, the employer has established a reasonable basis for the contest, an award of attorney's fees *may* be excluded. In other words, the WCJ is *permitted*, *but not required*, to exclude an award of attorney's fees. The Commonwealth Court below, in "always interpret[ing] Section 440 to mean that 'attorney[s'] fees shall be awarded *unless* a reasonable basis for the employer's contest has been established,'" *Lorino*[ *v. Workers' Comp. Appeal Bd.* (Pa. Cmwlth.,] No. 1217 C.D. 2019[, filed August 19, 2020), slip op.] at 11, disregarded the distinction between the terms "shall" and "may," and failed to recognize the discretion afforded to the workers' compensation judges to award attorney's fees even when they find a reasonable basis for an employer's contest.
>
> To be clear, we do not suggest that, under Section 440, a WCJ may never deny an award of attorney's fees when the employer has established a reasonable basis for its contest. As explained above, the language of Section 440 affords the WCJ *discretion* to refuse an award of attorney's fees in such circumstances. Rather, it is the Commonwealth

8

Court's interpretation of Section 440 as a *per se* disqualification of an award of claimant's attorney's fees where the employer has established a reasonable basis for its contest which is contrary to the plain language of the statute.

*Lorino*, 266 A.3d at 494 (emphasis in original; footnotes omitted). Thus, in matters involving reasonable contests, WCJs retain discretion to determine whether Section 440 attorney's fees should be assessed or excluded. Further, while Section 440(a) of the Act provides no standards for the exercise of discretion on behalf of WCJs, in *Lorino*, the Supreme Court expressly stated: "We are confident judges will apply their discretion based on the humanitarian and remedial purposes which underlie the [Act]." *Id.* at 494 n.7.

In the instant matter, on remand, the WCJ found as follows:

7. [] Prim has requested additional attorney's fees in the amount of $16,747.50 over and above what he has received as [20] percent []of Claimant's award from the date of injury to March 21, 2021.

8. In reviewing the record, this [WCJ] bears in mind the humanitarian and remedial purposes of the [Act]. Under *Lorino*[], where Employer has established a reasonable basis for contest in the underlying Claim Petition, attorney's fees "may be excluded" under [Section] 440(a). This [WCJ] finds that the instant [case] can be distinguish[ed] from *Lorino* because in *Lorino* [the c]laimant's attorney was unable to be compensated out of an award to [the c]laimant because [the c]laimant received only medical benefits and no indemnity benefits. Vincent Lorino was unable to obtain the services of an attorney under the normal contingent fee agreement and was required to enter into an hourly rate fee agreement where counsel's hourly rate was $400.00 per hour. In recognizing the humanitarian nature of the Act, the *Lorino*

9

Court ruled that attorney's fees shall be payable under [Section] 440(a) but they may be excluded when a reasonable basis [to challenge] has been established. In the instant matter, Claimant's former attorney[,] Prim, has received attorney's fees based upon his attorney fee agreement with Claimant, and the agreement of the parties for [20] percent []of the benefits Claimant received from July 27, 2020, through and including March 22, 2021.

9. This [WCJ] has reviewed the detailed attorney fee time and billing exhibit. Included in the time record is work performed on evidence that was not submitted in the case in chief. This includes exchanges with Dr. Fenichel and a review of Dr. Fenichel's report. Dr. Fenichel did not testify in this matter. Also included are discussions with possible third-party counsel, apparently to investigate whether or not a lawsuit could be brought under a liability theory using a possible alteration of the lawn mower as a cause for Claimant's injury in this matter. The underlying record also reveals that Claimant delayed the trial in this matter because he was unable to testify at the hearing scheduled for his final testimony on March 22, 2021, as on the morning of the testimony, he had been released from inpatient drug rehabilitation treatment and did not feel well. In addition, Claimant unreasonably delayed authorization and production of his psychiatric records, resulting in the necessity of an [i]nterlocutory [o]rder [c]ompelling their production or risk [sic] possible dismissal of the Claim Petition.

10. This [WCJ] finds that the record when reviewed as a whole during the time [] Prim was counsel of record[] does not support the payment of additional attorney's fees above and beyond what was agreed to by the parties for the litigation of Claimant's Claim Petition.

WCJ Remand Opinion at 3-4.

10

In denying Prim's argument that the WCJ erred by focusing only on the existence of a contingent fee as the determinative factor in the *Lorino* analysis, the Board noted that "the Court in *Lorino* did not enumerate any particular factors to consider or rank in their importance, other than referencing the humanitarian and remedial purposes of the Act." Board Remand Opinion at 5. The Board continued:

> We determine that the WCJ did not err in observing that a major factual factor in *Lorino* was that the claimant had no indemnity benefits out of which to pay a contingent fee, and would have to pay an hourly rate of $400 to his counsel. Here, the WCJ made specific findings regarding the circumstances surrounding this litigation, compared them to the facts of *Lorino*, applied *Lorino*, and exercised her discretion not to award a *quantum meruit* attorney's fee where [Employer's] contest was reasonable, and Claimant was awarded indemnity benefits and had agreed to a contingent fee award of 20 percent of those indemnity benefits. Although [] Prim advocates for a *quantum meruit* attorney's fee award, the WCJ had sole discretion whether to assess or exclude such award, and we cannot say that the WCJ committed an abuse of her discretion in this case.

Board Remand Opinion at 5-6. The Board further noted in a footnote that

> [] Prim asserts that the WCJ erred in finding that there was a request for an additional *quantum meruit* attorney's fee of $16,747.50 over and above the 20 percent contingent fee already paid by Claimant, when clearly the request was for Claimant to be reimbursed what he had paid as a contingent counsel fee with the balance going to the attorney who performed the work. [] Prim further asserts that his time spent discussing the viability of a third party case and the delay caused by Claimant's illness and [Employer's] attempt to obtain irrelevant records should not factor against the imposition of Section 440 fees.

11

Again, the WCJ had discretion in assessing the factors to consider here, and she did not misapply the law in doing so. She correctly found that [] Prim was already paid out of Claimant's indemnity benefits, an arrangement to which Claimant had agreed. She also properly observed some issues with the amount of attorney's fees being requested, which presumably would have led to a reduced attorney's fee under Section 440(b) in the event she had opted to award one. There is no reversible error here.

Board Remand Opinion at 6 n.2.

We find no error with the Board's affirmance of the WCJ Remand Decision. As the Board noted, under *Lorino*, the WCJ had discretion to assess or exclude attorney's fees under Section 440(a) of the Act. The WCJ reviewed the record, determined that Employer had reasonably contested the Claim Petition, and, bearing in mind the humanitarian and remedial purposes of the Act, exercised her discretion in excluding the requested *quantum meruit* attorney's fees, which determination was supported by substantial evidence of record before the WCJ. Accordingly, we find no error of law or abuse of discretion either in the WCJ's decision to deny Prim's request for *quantum meruit* fees or in the Board's affirmance thereof.

**B.** *Competence of the Employer Toxicological Opinion*

Prim also alleges that the WCJ and the Board erred by basing the determination of Employer's reasonable contest on the report of its toxicological expert. *See* Prim's Br. at 12-19. Revisiting Dr. Kashani's testimony, Prim contends that Dr. Kashani's opinion was unsupported by the record and therefore not competent. *See id.* Prim first argues that Dr. Kashani's opinion is based on an incorrect assumption that Claimant took Xanax and Kratom concurrently and a short time prior to the accident. *See id.* at 13-15. He then claims that Dr. Kashani

12

forwarded his opinion without any knowledge of the properties or effect of Kratom. *See id.* at 15-16. Thirdly, Prim argues that Dr. Kashani based his opinion on a deficient scientific paper. *See* Prim's Br. at 16-17. Prim is not entitled to relief on this claim.

This Court has explained that

[a] medical expert's opinion is not rendered incompetent unless it is solely based on inaccurate or false information. The opinion of a medical expert must be viewed as a whole, and even inaccurate information will not render the opinion incompetent unless it is depend[e]nt on those inaccuracies. Whether an expert's opinion is incompetent is a question of law subject to our plenary review.

*Casne v. W[orkers' Comp. Appeal Bd.] (Stat Couriers, Inc.)*, 962 A.2d 14, 16 (Pa. Cmwlth. 2008) (internal citations omitted).

The Board summarized Dr. Kashani's testimony as follows:

Dr. Kashani stated he is board certified in emergency medicine and addiction medicine. He had worked as the assistant director and as a staff toxicologist at the New Jersey State Poison Center, and has been on the faculty of St. Joseph's Regional Medical Center since 2007. Dr. Kashani testified that during Claimant's evaluation in the hospital, he tested positive for amphetamines, benzodiazepines, and marijuana. He stated that Claimant admitted, in his deposition, taking [K]ratom and benzodiazepines and occasionally smoking marijuana, and that Claimant has a history of anxiety, depression, [post-traumatic stress disorder], and opioid addiction. Dr. Kashani further stated that Claimant testified to taking 2 milligrams of Xanax daily, prescribed by Dr. Wrenn, and that he took that the day of, or right around the time of the accident. He stated that Claimant also admitted taking [K]ratom either the night before or the morning of the

13

accident. Dr. Kashani testified that [K]ratom had stimulant-like effects, so people can be hyper, have a clouded sensorium, be impulsive, and various other things. At higher doses [K]ratom has opioid-like effects which can cause central nervous system depression and respiratory depression. He further stated that adulterants are often put into drugs that aren't regulated, to have a synergistic effect, an additive effect, or sometimes an effect that's not necessarily consistent with the drug that the buyer is after. The FDA does not govern what's in [K]ratom and there is no standard testing to know that what the person is buying is consistent in dose and content. Dr. Kashani testified that given Claimant's testimony to taking Xanax and [K]ratom in close temporal relation to the accident, it's logical to assume that there was some type of psychomotor impairment, either obvious or that could be demonstrated on psychomotor testing, that contributed to or significantly contributed to Claimant's accident. He opined that the combined effects cause inebriation and intoxication to an extent that Claimant was at a high risk for bodily injury while operating a lawn mower, and the use of both concurrently significantly contributed to, if not caused, the injuries sustained. On cross-examination, Dr. Kashani was challenged with regard to Claimant's deposition testimony. Dr. Kashani noted Claimant's acknowledgement of imprecise recollection, and that Claimant said he had taken [K]ratom either the night before the accident, the morning of the accident, or the night before that. Dr. Kashani further testified that the majority of his opinion was based on Claimant's testimony, not the urine test. He agreed that Xanax was prescribed for Claimant and that [K]ratom is totally unregulated in the United States. He did not factor cannabinoids into his opinion. He agreed that urine tests alone cannot determine impairment. Dr. [Kashani] further agreed that an article which he referenced for a synergistic effect between [K]ratom and Xanax states that there is debate as to whether a combination of stimulants and depressants will attenuate some of their individual impairing effects. He additionally agreed that if his

14

assumption as to the timing of Claimant's ingestion of [K]ratom was inaccurate, he could reach a different conclusion.

First Board Opinion at 6-7 (internal record citations omitted).

The Board noted that the WCJ in the instant matter made her finding regarding the reasonableness of Employer's contest "based on the conflicting medical and toxicology opinions presented[.]" First Board Opinion at 8. The Board noted:

> [Prim] confines his argument to Dr. Kashani's testimony, arguing that Dr. Kashani misunderstood Claimant's testimony as to when he took Xanax and [K]ratom, and that Dr. Kashani cited as authority for his opinion an article which is inapplicable. [Prim] revisits the cross-examination of Dr. Kashani and argues that his testimony is not competent. A medical expert's opinion is not incompetent unless it is base[d] solely on inaccurate or false information. *Casne*. Dr. Kashani's opinion was rejected by the WCJ. Notwithstanding, [Employer] presented conflicting medical evidence, and there is no evidence that the contest was frivolous or intended to harass Claimant.

First Board Opinion at 8.

We find no error in the Board's conclusion. As to Claimant's ingestion of medications and chemical substances, the WCJ found that, within 24 hours of the incident, Claimant had taken both Xanax and the over-the-counter herbal product Kratom, which he took either the night before or the morning of the incident. *See* First WCJ Decision at 4. Further, with regard to the expert medical testimony received, the WCJ ruled as the trier of fact concerning the credibility and weight of each expert. *See id.* at 11-12. Simply put, Employer had the right to contest the

15

Claim Petition through an expert. That the WCJ credited Claimant's experts and did not credit Employer's expert's opinion does not mean that Employer's expert's opinion was based wholly on inaccuracies, and the record does not support such a claim. The WCJ was free to rule on the credibility and weight of the evidence presented by the parties, and Claimant ultimately prevailed in the battle of experts. However, the argued discrepancies between Employer's expert's testimony and Claimant's testimony and between Dr. Kashani's conclusions and those of Claimant's experts, and Prim's argument that Dr. Kashani's conclusions were based on articles that were not relevant, do not render Dr. Kashani's opinions incompetent. *Casne*, 926 A.2d at 14. The Board correctly denied Claimant relief on the claim that the WCJ erred by finding Employer's contest reasonable based on the testimony of Dr. Kashani.

### IV. Conclusion

For the above reasons, we affirm the Board Remand Opinion.

_____
CHRISTINE FIZZANO CANNON, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph A. Prim, Esq.,                       :
                        Petitioner           :
                                             :
            v.                               :
                                             :
Har Jehuda Cemetery and                      :
Michael Shields (Workers'                    :
Compensation Appeal Board),                  :    No. 1443 C.D. 2023
                        Respondents          :

# **O R D E R**

AND NOW, this 4th day of September, 2025, the November 9, 2023 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge